# EXHIBIT A

Case 2:21-cv-06970-RSWL-KS   Document 1-1   Filed 08/30/21   Page 2 of 16   Page ID #:9
Electronically FILED by Superior Court of California, County of Los Angeles on 05/13/2021 03:47 AM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Barel,Deputy Clerk
21STCV17915

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Blue Cross of California and DOES 1-10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

O.C. Multispecialty Surgery Center

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Stanley Mosk Courthouse | **CASE NUMBER:** *(Número del Caso):* 21STCV17915 |
|---|---|

111 N. Hill St.
Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jonathan Stieglitz, 11845 W. Olympic Blvd., Suite 800, Los Angeles, California 90064, (323) 979-2063

| DATE. May 13, 2021 *(Fecha)* 05/13/2021 | Sherri R. Carter Executive Officer / Clerk of Court Clerk, by _____ M. Barel _____, Deputy *(Secretario)* *(Adjunto)* |
|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Blue Cross of California

under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]
**SUMMONS**
Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

21STCV17915

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Barbara Scheper

Electronically FILED by Superior Court of California, County of Los Angeles on 05/13/2021 03:47 AM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Barel,Deputy Clerk

1    JONATHAN A. STIEGLITZ
     (SBN 278028)
2    jonathan.a.stieglitz@gmail.com
     THE LAW OFFICES OF
3    JONATHAN A. STIEGLITZ
     11845 W. Olympic Blvd., Ste. 800
4    Los Angeles, California 90064
     Telephone:    (323) 979-2063
5    Facsimile:    (323) 488-6748

6    Attorney for Plaintiff
     O.C. Multispecialty Surgery Center
7

8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                              COUNTY OF LOS ANGELES

10

11   O.C. Multispecialty Surgery Center        Case No.:  21STCV17915

12                    Plaintiff,               Complaint For:

13          v.                                 1.    NEGLIGENT MISREPRESENTATION
                                               2.    BREACH OF WRITTEN CONTRACT
14   Blue Cross of California and DOES 1-10,

15                    Defendant.
                                               **(Jury Trial Requested)**
16                                             **Total Damages - $500,000.00**

17

18

19

20

21

22

23

24

25

26

27

28

                                    Complaint

1

2        Plaintiff O.C. Multispecialty Surgery Center (hereinafter referred to as "PLAINTIFF" or

3   "Medical Provider") complains and alleges:

4                                          **PARTIES**

5        1.      Plaintiff, Medical Provider, is and at all relevant times was a medical corporation,

6   organized and existing under the laws of the State of California.  Medical Provider is and at all

7   relevant times was in good standing under the laws of the State of California.

8        2.      DEFENDANT, Blue Cross of California, is and was licensed to do business in and

9   is and was doing business in the State of California, as insurers. PLAINTIFF is informed and

10  believes that DEFENDANT is licensed by to transact the business of insurance in the State of

11  California.  DEFENDANT is, in fact, transacting the business of insurance in the State of

12  California and is thereby subject to the laws and regulations of the State of California.

13       3.      The true names and capacities, whether individual, corporate, associate, or

14  otherwise, of defendants DOES 1 through 10, inclusive, are unknown to PLAINTIFF, who

15  therefore sues said defendants by such fictitious names. PLAINTIFF is informed and believes and

16  thereon alleges that each of the defendants designated herein as a DOE is legally responsible in

17  some manner for the events and happenings referred to herein and legally caused injury and

18  damages proximately thereby to PLAINTIFF. PLAINTIFF will seek leave of this Court to amend

19  this Complaint to insert their true names and capacities in place and instead of the fictitious

20  names when they become known to it.

21       4.      At all times herein mentioned, unless otherwise indicated, DEFENDANT/s were

22  the agents and/or employees of each of the remaining defendants, and were at all times acting

23  within the purpose and scope of said agency and employment, and each defendant has ratified and

24  approved the acts of his agent. At all times herein mentioned, DEFENDANT/s had actual or

25  ostensible authority to act on each other's behalf in certifying or authorizing the provision of

26  services; processing and administering the claims and appeals; pricing the claims; approving or

27  denying the claims; directing each other as to whether and/or how to pay claims; issuing

28

1  remittance advices and explanations of benefits statements; making payments to Medical Provider
2  and its Patients.

3  ### <u>GENERAL ALLEGATIONS</u>

4       5.     All of the claims asserted in this complaint are based upon the individual and
5  proper rights of Medical Provider in its own individual capacity and are not derivative of the
6  contractual or other rights of the Medical Provider's Patient.  A number of the claims asserted in
7  this complaint arise out of the Medical Provider's interactions with DEFENDANT and DOES 1
8  through 10, inclusive and are derived from the representations and warranties made during those
9  conversations amongst those parties. Medical Provider does not in any way, seek to enforce the
10  contractual rights of the Medical Provider's Patients, through the Patients' insurance contract,
11  policies, certificates of coverage or other written insurance agreements.

12       6.     This complaint arises out of the failure of DEFENDANT to make proper payments
13  and/or the underpayment to Medical Provider by DEFENDANT and DOES 1 through 10,
14  inclusive, of amounts due and owing now to Medical Provider for surgical care, treatment and
15  procedures provided to Patients, who are insureds, members, policyholders, certificate-holders or
16  were otherwise covered for health, hospitalization and major medical insurance through policies
17  or certificates of insurance issued and underwritten by DEFENDANT and DOES 1 through 10,
18  inclusive.

19       7.     Medical Provider is informed and believes based on DEFENDANT's oral and
20  other representations that the Patient was an insured of DEFENDANT either as a subscriber to
21  coverage or a dependent of a subscriber to coverage under a policy or certificate of insurance
22  issued and underwritten by DEFENDANT and DOES 1 through 10, inclusive, and each of them.
23  Medical Provider is informed and believes that the Patient entered into a valid insurance
24  agreement with DEFENDANT for the specific purpose of ensuring that the Patient would have
25  access to medically necessary treatments, care, procedures and surgeries by medical practitioners
26  like Medical Provider and ensuring that DEFENDANT would pay for the health care expenses
27  incurred by the Patient.

28

8.     Medical Provider is informed and believes that DEFENDANT and DOES 1 through 10, inclusive, and each of them, received and continue to receive, valuable premium payments from the Patient and/or other consideration from Patient under the subject policies applicable to Patient.

9.     It is standard practice in the health care industry that when a medical provider enters into a written preferred provider contract with a health plan such as DEFENDANT, that a medical provider agrees to accept reimbursement that is discounted from the medical provider's total billed charges in exchange for the benefits of being a preferred or contracted provider.

10.    Those benefits include an increased volume of business, because the health plan provides financial and other incentives to its members to receive their medical care and treatments from the contracted provider, such as advertising that the provider is "in network", and allowing the members to pay lower co-payments and deductibles to obtain care and treatment from a contracted provider.

11.    Conversely, when a medical provider, such as Medical Provider, does not have a written contract or preferred provider agreement with a health plan, the medical provider receives no referrals from the health plan.

12.    The medical provider has no obligation to reduce its charges. The health plan is not entitled to a discount from the medical provider's total bill charge for the services rendered, because it is not providing the medical provider with in network medical provider benefits, such as increased patient volume and direct payment obligations.

13.    The reason why medical providers have chosen to forgo the benefits of a contract with a payor is that, in recent years, many insurers including DEFENDANT's contracted rates for in-network providers have been so meager, one-sided and onerous, that many providers like Medical Provider have determined that they cannot afford to enter into such contracts.  As a result, a growing number of medical providers have become non-contracted or out of network providers.

14.    Payors and insurers still want their patients to be seen and so they commonly promise to pay out of network providers a percentage of the market rate for the procedure, also

described as, an average payment for the procedure performed or provided by similarly situated medical providers within similarly situated areas or places of practice. Rather than use the words market rate to simplify terms, payors have long used words or combinations of words such as usual, reasonable, customary and allowed, all to mean an average payment for a procedure provided by similarly situated medical providers within similarly situated areas or places of practice ("UCR").

15.     The United States government provides a definition for the term UCR. "The amount paid for a medical service in a geographic area based on what providers in the area usually charge for the same or similar medical service. The UCR amount sometimes is used to determine the allowed amount."[1]

16.     Based upon these criteria, Medical Provider's charges are usual, reasonable and customary.  Medical Provider charged DEFENDANT the same fees that it charges all other payors.  Medical Provider's fees are comparable to the prevailing provider rates for other surgeons in comparable geographic areas to the one in which the services were provided.

17.     DEFENDANT uses the term UCR in its insurance policies.

18.     When DEFENDANT uses the term UCR for the price of a medical service, DEFEDANT will utilize a medical bill database from Fair Health Inc. to determine the exact dollar amount to be paid for a medical claim.[2]

_____

[1] *See* Healthcare.gov, UCR (Usual, Customary and Reasonable) (February 19, 2020), https://www.healthcare.gov/glossary/UCR-usual-customary-and-reasonable/ (defining UCR)

[2] United Healthcare, Information on Payment of Out-of-Network Benefits (March 6, 2018), https://www.uhc.com/legal/information-on-payment-of-out-of-network-benefits ("FH, [Fair Health], Benchmarking Database. One of two compilations of information on health care professional charges created by Fair Health and used by affiliates of UnitedHealth Group **to determine payment** for out-of-network professional services when reimbursed under standards such as 'the reasonable and customary amount,' 'the usual, reasonable and customary amount,' 'the prevailing rate,' or other similar terms that base payment on what other healthcare professionals in a geographic area charge for their services."

19.     Fair Health Inc. is a database which is available to the public. It is available for purchase when utilized by entities like DEFENDANT and it is available for free in a more limited fashion for use by consumers.[3]

20.     When a medical provider like PLAINTIFF is told that DEFENDANT will be paying a claim based on UCR, PLAINTIFF expects that DEFENDANT will be utilizing the Fair Health database to calculate the exact dollar amount that will be paid.

21.     In the alternative, pursuant to California Health and Safety Code Section 1371.31 and Cal. Code Regs. tit. 28, § 1300.71(3)(c), all medical providers have their own individual right to payment from insurers for medical services provided to one of their insureds in accordance with a patient's evidence of coverage.

22.     According to California Health and Safety Code Section 1371.31and Cal. Code Regs. tit. 28, § 1300.71, a failure to pay a medical provider in accordance with a patient's evidence of coverage, vests a medical provider with its own separate individual right to recovery in accordance with a patient's evidence of coverage.

23.     In either case, PLAINTIFF has a reputation for providing high quality care and, as a result, PLAINTIFF expects it will be appropriately compensated for those services.

## SPECIFIC FACTS

## PATIENT PS

24.     On July 20, 2018, Patient received a surgical procedure from Medical Provider.

25.     On July 19, 2018 at 11:45 a.m. so as to determine whether or not to provide services, Medical Provider's employee, Winnie T., obtained representations from DEFEDANT's representative, Jeff B., regarding the manner in which Medical Provider would be paid for services.

---

[3] *See* fairhealthconsumer.org, (February 19, 2020), https://www. fairhealthconsumer.org/medical/results (assisting consumers to calculate the amount to be paid for a particular medical procedure)

COMPLAINT

26.   Defendant represented to Medical Provider that Patient's deductible is and was $2,000.00 and Patient's Max Out Of Pocket ("MOOP") expense is and was $8,500.00 and that to date for that calendar year Patient had paid $0.

27.   Defendant represented that once the MOOP was met, there would be no further cost sharing with the Patient and Defendant would be responsible for 100% of the UCR rate.

28.   Defendant represented to Medical Provider that payment would not be based on the Medicare Fee Schedule.

29.   All of the information obtained was documented by MEDICAL PROVIDER as part of MEDICAL PROVIDER's office policy and practice.

30.   At no time prior to the provision of services to Patient by MEDICAL PROVIDER was MEDICAL PROVIDER advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

31.   DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDER on notice of any reduction in the originally stated payment percentage.

32.   Despite representing that payment would be made at the UCR rate, DEFENDANT knew or should have known that it would not be paying Medical Provider at the UCR rate.

33.   Despite representing that payment would not be made at a Medicare rate, DEFENDANT knew or should have known that it would be paying Medical Provider at a Medicare rate.

34.   MEDICAL PROVIDER was never provided with a copy of Patient's plan by DEFENDANT or Patient. As a result, MEDICAL PROVIDER could not even make itself aware of any reduction of the payment amount.

35.   Medical Provider relied and provided services solely based on DEFENDANT's statements, promises and representations. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to

provide medical services. Medical Provider took DEFENDANT at its word and promises and provided services based solely on those promises and representations.

36.     In the alternative, pursuant to California Health and Safety Code Section 1371.31 and Cal. Code Regs. tit. 28, § 1300.71(3)(c) DEFENDANT had a contractual obligation to pay Medical Provider in accordance with Patient's plan document and agreement.

37.     Additionally, Patient assigned all of Patient's rights to receive reimbursement for the medical services to Medical Provider.

38.     According to the Patient's plan agreement, DEFENDANT was obligated to pay Medical Provider, Medical Provider's full billed amount.

39.     Under either scenario, following the procedure, Medical Provider submitted to DEFENDANT any and all billing information required by DEFENDANT, including a bill for $229,985.00 and $228,704.00

40.     Following the procedure, MEDICAL PROVIDER submitted its claims to DEFENDANT accompanied with lengthy operative reports, chart notes, and other medical records.  No matter whether large or small, all of MEDICAL PROVIDER's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. MEDICAL PROVIDER submitted to DEFENDANT any and all billing information and any and all additional information requested by DEFENDANT.

41.     DEFENDANT processed the bill and made a payment of $898.51 and 267.00.

42.     The amount paid was well below the billed amount and well below a UCR amount.

43.     As of the date of this complaint, DEFENDANT has still refused to make the appropriate payment to Medical Provider and Medical Provider is entitled to that payment from DEFENDANT.

## FIRST CAUSE OF ACTION

## FOR NEGLIGENT MISREPRESENTATION

44.     Medical Provider incorporates by reference all previous paragraphs as though fully set forth herein.

45.     DEFENDANT falsely represented to Medical Provider that payment for services would be based on UCR and not Medicare.

46.     DEFENDANT knew that any payment made to Medical Provider would not be made the UCR rate and would instead be made at the Medicare rate.

47.     DEFENDANT should have known that in making the representations that payment would be made at the UCR and not Medicare rate that Medical Provider would go on to provide the services.

48.     Medical Provider then relied on DEFENDANT's misrepresentation and provided the services to Patients.

49.     Medical Provider has been damaged in not receiving payment at the represented UCR rate.

### SECOND CAUSE OF ACTION

### FOR BREACH OF WRITTEN CONTRACT

50.     Medical Provider incorporates by reference all previous paragraphs as though fully set forth herein.

51.     Pursuant to California Health and Safety Code Section 1371.31 and CAL. CODE REGS. TIT. 28, § 1300.71, once Medical Provider provided medical services to Patient, DEFENDANT was obligated to pay Medical Provider in accordance with Patient's health plan documents.

52.     Medical Provider provided the services, but DEFENDANT failed to pay according to the terms of the patient's health plan documents.

53.     At best, DEFENDANT applied policies and terms not found in the over 200 pages of each patient's evidence of coverage, but instead claimed to exist in other policies, documents and manuals utilized by DEFENDANT, but never provided to patient or medical providers.

54.     Additionally and separately, Patient assigned the rights and benefits under its health plan to Medical Provider.

55. At all times the Patient's health plan agreement was in full force and effect.

56. Under the terms of the agreement, DEFENDANT was obligated to pay for facility services based on Medical Provider's billed charges.

57. DEFENDANT failed to make payment in accordance with the terms of the written agreement and instead made a payment that was far less than Medical Provider's billed amount.

58. As an actual, legal and proximate result of the aforementioned conduct of defendants, and each of them, Medical Provider has suffered and will continue to suffer in the future, damages based on DEFENDANT's failure to pay Medical Provider under the terms of the Patient's health plan agreement. A total amount to be determined at trial.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## **PRAYER FOR RELIEF**

**WHEREFORE,** O.C. Multispecialty Surgery Center prays for judgment against defendants as follows:

1.    For compensatory damages in an amount to be determined, plus statutory interest;

2.    For restitution in an amount to be determined, plus statutory interest;

3.    For a declaration that DEFENDANTS are obligated to pay plaintiff all monies owed for services rendered to the Patient; and

4.    For such other relief as the Court deems just and appropriate

Dated: May 13, 2021                                LAW OFFICE OF JONATHAN A. STIEGLITZ

                                                              By: /s/ Jonathan A. Stieglitz
                                                                    JONATHAN A. STIEGLITZ
                                                                    O.C. Multispecialty Surgery Center

## **DEMAND FOR JURY TRIAL**

Plaintiff, O.C. Multispecialty Surgery Center, hereby demands a jury trial as provided by law.

Dated: May 13, 2021                                LAW OFFICE OF JONATHAN A. STIEGLITZ

                                                              By: /s/ Jonathan A. Stieglitz
                                                                    JONATHAN A. STIEGLITZ
                                                                    Attorneys for Plaintiff,
                                                                    O.C. Multispecialty Surgery Center

| | SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|---|
| | | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**05/13/2021**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ M. Barel _____ Deputy |

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

### NOTICE OF CASE ASSIGNMENT

### UNLIMITED CIVIL CASE

| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>21STCV17915 |
|---|---|

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✓ | Barbara M. Scheper | 30 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

Sherri R. Carter, Executive Officer / Clerk of Court

on 05/13/2021
(Date)

By M. Barel _____, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles

05/19/2021

Sherri R. Carter, Executive Officer / Clerk of Court

By:    B. Byers    Deputy

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF:
O.C. Multispecialty Surgery Center

DEFENDANT:
Blue Cross of California

## NOTICE OF CASE MANAGEMENT CONFERENCE

CASE NUMBER:
21STCV17915

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

| Date: 10/12/2021 | Time: 8:30 AM | Dept.: 30 |
|---|---|---|

NOTICE TO DEFENDANT:  THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT  FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC, Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: 05/19/2021

Barbara M. Scheper / Judge
Judicial Officer

---

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☑ by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

Jonathan A Stieglitz, Esq.
11845 W Olympic Blvd
Ste 800
Los Angeles, CA 90064

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 05/19/2021

By B. Byers
Deputy Clerk

## NOTICE OF
## CASE MANAGEMENT CONFERENCE

Cal. Rules of Court, rules 3.720-3.730
LASC Local Rules, Chapter V@^^